**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT CLEVELAND**

| | |
|---|---|
| **ROBERT POPE,** individually, and on behalf of all others similarly situated, 6407 Lafayette Boulevard Independence, Ohio 44131 | ) ) ) ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| **CARRINGTON MORTGAGE SERVICES, LLC.** c/o CT Corporation System 4400 Easton Commons Way, Suite 125 Columbus, Ohio 43219 | ) ) ) ) ) |
| | ) |
| Defendant. | ) |

Case No.

**CLASS ACTION COMPLAINT**

**JURY DEMANDED**

Plaintiff ROBERT POPE, individually, and on behalf of all others similarly situated, by and through counsel, and for his Class Action Complaint against Defendant CARRINGTON MORTGAGE SERVICES, LLC. ("Defendant"), states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.       Plaintiff ROBERT POPE ("Plaintiff" and "Pope") is a natural person residing in Cuyahoga County, Ohio.

2.       Defendant CARRINGTON MORTGAGE SERVICES, LLC. ("Defendant" and "Carrington") is an incorporated business under the laws of the State of Delaware that maintains its principal place of business at 1610 East Street, Andrew Place, Suite B-150 Santa Ana, California, 92705.

3.       Carrington does business in the State of Ohio and is licensed to do business in the State of Ohio as a foreign Corporation.

1

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

5. This court has supplemental jurisdiction over any related state law claims in this action under 28 U.S.C. § 1367.

6. Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because Defendant solicited business within this District, Plaintiff is a resident within this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## RESPA AND REGULATION X

7. In January 2013, the Consumer Finance Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the authority granted by the Dodd-Frank Wall Street Reform and Consumer Protection Act—Public Law No. 111-203, 124 Stat. 1376 (2010)—which amended the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq*.

8. The CFPB's RESPA Mortgage Servicing Final Rules—known as "Regulation X" and codified as 12 CFR §§ 1024.1, *et seq*.—were issued on January 17, 2013, and became effective on January 10, 2014.

9. Through Regulation X, the CFPB has provided guidance for the interpretation of RESPA.

10. Relative to loss mitigation applications, Regulation X provides explicit requirements by which servicers must abide pursuant to 12 CFR § 1024.41.

11. Specifically, if a servicer receives a complete loss mitigation application[1] from a borrower more than thirty-seven (37) days prior to a foreclosure sale, 12 CFR § 1024.41(c)(1)(ii)

---

[1] For purposes of the following provisions of Regulation X, a "facially complete" loan modification application is considered to be complete if, after such a loan modification application is submitted, a "servicer later discovers additional information or corrections to a previously

2

mandates that the servicer "provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage."  In addition, if the appeal provisions of 12 CFR § 1024.41(h) are applicable, 12 CFR § 1024.41(c)(1)(ii) requires that the servicer to notify the borrower "that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for" by 12 CFR § 1024.41(h).

12.     12 CFR § 1024.41(h) is applicable "if a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or" before the servicer has made the first notice or filing required by applicable law to begin the foreclosure process.[2]  12 CFR § 1024.41(h)(1).

13.     If 12 CFR § 1024.41(h) is applicable, the servicer must "permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower…within 14 days after the servicer provides the offer of a loss mitigation option to the borrower pursuant to" 12 CFR § 1024.41(c)(1)(ii).  12 CFR § 1024.41(h)(1)-(2).

14.     12 CFR § 1024.41(h)(3) specifies that an appeal made pursuant to 12 CFR § 1024.41(h)(1) "shall be reviewed by different personnel than those responsible for evaluating the borrower's complete loss mitigation application."

---

submitted document are required to complete the application" and the borrower provides the additional information within a reasonable time after it is requested by the servicer.  12 CFR § 1024.41(c)(2)(iv).

[2] According to the CFPB's official interpretation of 12 CFR § 1024.41(b)(3), "if no foreclosure sale has been scheduled as of the date that a complete loss mitigation application is received, the application is considered to have been received more than 90 days before any foreclosure sale."

15.     Indeed, in enacting 12 CFR § 1024.41(h)(3), the CFPB noted that "servicers may make mistakes in evaluating borrowers for loan modification options," but that "many of these mistakes can…be corrected if a servicer undertakes a second review." 78 Fed. Reg. 10835.

16.     Based upon the plain language of 12 CFR § 1024.41(h)(3), the CFPB's official interpretation of that paragraph, and the CFPB's stated goal of identifying and correcting mistakes made during the initial review of an application, it is clear that such an appeal is to consist of an independent review of a borrower's loss mitigation application, whereby separate and discrete judgments are rendered relative to that loss mitigation application.

17.     After such an appeal is made, 12 CFR § 1024.41(h)(4) requires the servicer to "provide a notice to the borrower stating the servicer's determination of whether the servicer will offer the borrower a loss mitigation option based upon the appeal and, if applicable, how long the borrower has to accept or reject such an offer" within 30 days of the borrower's appeal.

18.     Finally, Regulation X explicitly provides that "[a] borrower may enforce the provisions of [12 CFR § 1024.41] pursuant to section 6(f) of RESPA (12 U.S.C. § 2605(f))." 12 CFR § 1024.41(a).

## STATEMENT OF FACTS

### *Plaintiff's and Class Members' Applications*

19.     Carrington is a mortgage "servicer" as that term is defined by 12 CFR § 1024.2(b) and 12 U.S.C. § 2605(i)(2). Carrington has been the current servicer of Plaintiff's and Class members' notes, and mortgages on real property that secure those notes (collectively referred to hereinafter as the "loans") at all times relevant to this action.

20.     Plaintiff's and Class members' loans are each a "federally related mortgage loan" as that term is defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 CFR § 1024.2(b).

4

21.     Plaintiff and Class members maintain and have maintained the homes securing their loans as their primary, principal residences at all times pertinent to this matter.

22.     As such, Carrington is subject to the requirements of RESPA and Regulation X, and does not qualify for the exception for "small servicers"—as defined by 12 CFR § 1026.41(e)(4)—nor for the exemption for a "qualified lender"—as defined by 12 CFR § 617.700.

23.     Plaintiff and Class members submitted complete loss mitigation applications ("Applications")[3] to Carrington more than 90 days before a foreclosure sale was scheduled[4] relative to the real property that was the subject of their loans.

24.     Plaintiff's and Class members' Applications were the first such Applications submitted to Carrington relative to the modification of their loans.  As such, the exception to the requirements of 12 CFR § 1024.41 relative to duplicative requests established by 12 CFR § 1024.41(i) did not apply to Plaintiff's and Class members' Applications.

25.     After Plaintiff and Class members submitted their Applications, Carrington sent Plaintiff and Class members responses stating that Plaintiff and Class members failed to meet the eligibility requirements for some or all loss mitigation options for which their Applications were reviewed for eligibility ("Denial Letters").  *See*, *e.g.*, Carrington's Denial Letter in response to Plaintiff's Application, attached hereto as Exhibit 1.

26.     The Denial Letters also set forth which denials of loss mitigation options were appealable pursuant to 12 CFR § 1024.41(h), and stated that "based on the guidelines of the [CFPB,] an appeal may be submitted if you believe you were wrongfully denied for a loan

---

[3] The term "Applications" as used herein, also refers to "facially complete" loss mitigation applications that were deemed to be complete in accordance with 12 CFR § 1024.41(c)(2)(iv). *See*, Note 1, *supra*.
[4] *See*, Note 2, *supra*.

modification.  *If applicable*, you must provide [Carrington] supporting documentation for all items being disputed by no later than [a date thirty (30) days from the date of the Denial Letter]."  *See*, Exhibit 1 (emphasis added).

27.     At least one of the loss mitigation options for which Plaintiff's and Class members' Applications were denied was for trial or permanent loan modification programs available to Plaintiff and Class members, and that was indicated in the Denial Letters.  *See*, Exhibit 1.

28.     Accordingly, Carrington's denial of Plaintiff's and Class members' Applications was appealable because the Applications were submitted more than 90 days before a foreclosure sale was scheduled, and because at least one of the loss mitigation options for which Plaintiff's and Class members' Applications were denied was for trial or permanent loan modification programs, as required by 12 CFR § 1024.41(h)(1).

29.     As such, in response to the Denial Letters, Plaintiff and Class members sent correspondence notifying Carrington that they were appealing Carrington's denial of their Applications ("Appeal Notices"), as provided for by 12 CFR § 1024.41(h).  *See*, *e.g.*, Plaintiff's Appeal Notice, attached hereto as Exhibit 2.

30.     Plaintiff's and Class members' Appeal Notices responded to the bases for denial set forth in Carrington's Denial Letters, and set forth the specific reasons for their appeals of those Denial Letters.  *See*, Exhibit 2.

31.     If applicable, Plaintiff's and Class members' Appeal Notices also contained documentation supporting the specific bases for their appeals. However, when additional documentation was not applicable or necessary to support the appeal, no additional documentation was provided with the Appeal Notice.

32.     Plaintiff's and Class members' Appeal Notices were submitted to Carrington using the methods provided for in the Denial Letters—*e.g.*, by email, facsimile, or through Carrington's website—within the timeframe set forth in the Denial Letters.  *See*, Exhibit 2.

33.     Therefore, Plaintiff's and Class members' Appeal Notices complied with all relevant provisions of 12 CFR § 1024.41(h) to be eligible for an appeal, and/or complied with all requirements for an appeal set forth in Carrington's Denial Letters.

34.     Despite the fact that Plaintiff and Class members met all relevant criteria to be able to appeal the Denial Letters, Carrington responded to Plaintiff's and Class members' Appeal Notices by stating that Plaintiff and Class members were unable to appeal the denials of their Applications ("Appeal Rejection Letters").  *See*, *e.g.*, Carrington's Appeal Rejection Letter in response to Plaintiff's Appeal Notice, attached hereto as Exhibit 3.

35.     Specifically, the Appeal Rejection Letters stated that Carrington "determined that [the Appeal Notice] does not meet the requirements for consideration under [Carrington's] Formal Appeal Process."  All of the Appeal Rejection Letters contained the same or substantially the same pertinent language, including:

> In order to qualify for the Loan Modification Appeal Process the following conditions must be met (i) [Carrington] must be in receipt of your appeal request, in writing, within 30 calendar days of the most recently issued [Denial Letter]; (ii) the appeal must be clearly defined and include documentary evidence to support each of the elements being contested (*e.g.*, income documentation, value disputes, occupancy disputes); (iii) all documentation must be dated within 90 days from the date of the appeal submission.

*See*, Exhibit 3.

36.     Although Carrington's Appeal Rejection Letters do not specify which of the bases set forth above it relied upon in determining that Plaintiff and Class members could not appeal the

denials of their Applications, Plaintiff and Class members nevertheless satisfied all requirements to be able to appeal Carrington's denial of their Applications, as set forth above.

37.    In addition to the plain language of the Appeal Rejection Letters indicating that Carrington did not reconsider Plaintiff's and Class members' Applications in response to their Appeal Notices pursuant to 12 CFR § 1024.41(h), the fact that Carrington's Appeal Rejection Letters are sent within approximately one (1) or two (2) days of Carrington's receipt of Plaintiff's and Class members' Appeal Notices indicates that Carrington did not perform the requisite appeal process.

38.    To demonstrate, it routinely takes Carrington the entire thirty (30) days allowed by 12 CFR § 1024.41(c)(1) to review Plaintiff's and Class members' Applications.  As noted above, pursuant to 12 CFR § 1024.41(h)(3), Carrington is required to perform an independent and complete review of Plaintiff's and Class members' Applications as part of the appeal process.  As such, the discrepancy between the time it takes Carrington to review Plaintiff's and Class members' Applications—approximately 30 days—and the time it takes Carrington to respond to Plaintiff's and Class members' Appeal Notices—approximately 1-2 days—is further evidence that Carrington did not perform an appeal pursuant to 12 CFR § 1024.41(h).

39.    On information and belief, given that Plaintiff's and Class members' Appeal Notices complied with all relevant provisions of 12 CFR § 1024.41(h) to be eligible for an appeal, and/or complied with all requirements for an appeal set forth in Carrington's Denial Letters, Carrington has a policy to not perform appeals pursuant to the requirements of 12 CFR § 1024.41(h).  Put another way, Carrington has a policy of not performing appeals pursuant to the requirements of 12 CFR § 1024.41(h), regardless of whether loan modification applicants—such

as Plaintiff and Class members—have fully satisfied all requirements to be eligible for that appeal process.

40.     As such, Carrington violated the provisions of 12 CFR § 1024.41(h) by failing to reconsider Plaintiff's and Class members' Applications in response to the Appeal Notices.

41.     In addition, Carrington violated the provisions of 12 CFR § 1024.41(c)(1)(ii) by (a) stating in its Denial Letters that Plaintiff and Class members could avail themselves of 12 CFR § 1024.41(h)'s appeal process if they complied with the requirements set forth in those Denial Letters, but (b) rejecting Plaintiff's and Class members' Appeal Notices, and failing to reconsider Plaintiff's and Class members' Applications in accordance with the provisions of 12 CFR § 1024.41(h).

42.     In the alternative to the foregoing, if Carrington contends that Plaintiff's and Class members' Appeal Notices failed to comply with all relevant provisions of 12 CFR § 1024.41(h), and/or failed to comply with any Carrington-imposed requirements to avail themselves of 12 CFR § 1024.41(h)'s appeal process, any such alleged failure to comply would be due to Carrington's routine practice of failing to accurately and completely provide loan modification applicants—such as Plaintiff and Class members—with the information necessary to avail themselves of that appeal process.

43.     To demonstrate, when Carrington determines that loan modification applicants—such as Plaintiff and Class members—are ineligible for a trial or permanent loan modification, 12 CFR § 1024.41(d) requires Carrington to state, in its Denial Letters, "the specific reason or reasons for [Carrington's] determination" that a particular loan modification applicant was not qualified "for each such trial or permanent loan modification option" evaluated.  Similarly, 12 CFR § 1024.41(c)(1)(ii) requires Carrington to state, in its Denial Letters, whether a particular loan

modification applicant "has the right to appeal the denial of any loan modification option as well as the amount of time the [applicant] has to file such an appeal and any requirements for making an appeal, as provided for" by 12 CFR § 1024.41(h).

44.     As noted above, Plaintiff's and Class members' Appeal Notices responded to the bases for denial listed in Carrington's Denial Letters, set forth the specific reasons for their appeals of those Denial Letters, and met all requirements for an appeal set forth in those Denial Letters.

45.     Therefore, if Carrington's failure to perform an appeal in response to Plaintiff's and Class members' Appeal Notices is based upon some purported deficiency in those Appeal Notices, such a deficiency could only be the result of Carrington imposing some additional and/or alternative requirements upon Plaintiff and Class members that was not set forth in its Denial Letters.  Put another way, the only way that Carrington could contend that Plaintiff and Class members did not comply with all necessary requirements to avail themselves of 12 CFR § 1024.41(h)'s appeal process is if Carrington held Plaintiff and Class members to a higher standard than is set forth in its Denial Letters.

46.     Under that scenario, Carrington either (a) did not accurately and completely provide Plaintiff and Class members with the information required by 12 CFR § 1024.41(c)(1)(ii) in its Denial Letters, or (b) inaccurately or incompletely stated the specific reason or reasons for its rejection of Plaintiff's and Class members' Applications, as required by 12 CFR § 1024.41(d).

47.     However, Plaintiff and Class members relied on Carrington's statements in its Denial Letters as to the reasons for Carrington's denial of their Applications, and the requirements necessary to avail themselves of 12 CFR § 1024.41(h)'s appeal process, when they submitted their Appeal Notices to Carrington.

48.     Carrington knew and intended that Plaintiff and Class members would rely on its statements in its Denial Letters, and that Plaintiff and Class members would submit their Appeal Notices to Carrington in reliance on Carrington's statements in its Denial Letters.

49.     Accordingly, by adopting alternative and/or additional requirements that Plaintiff and Class members would not be aware of—*i.e.*, requiring Plaintiff and Class members to comply with requirements, or respond to grounds, that were not set forth in the Denial Letters—Carrington established a *de facto* policy of routinely failing to perform appeals pursuant to the requirements of 12 CFR § 1024.41(h).  Put another way, Carrington established requirements that Plaintiff and Class members would not be able to meet so that Carrington could deny Plaintiff's and Class members' right to appeal pursuant to 12 CFR § 1024.41(h).

50.     As such, even if Plaintiff and Class members were somehow not entitled to an appeal pursuant to 12 CFR § 1024.41(h), it was due to the fact that Carrington violated 12 CFR § 1024.41(c)(1)(ii) and 12 CFR § 1024.41(d) by misleading Plaintiff and Class members as to the necessary requirements/grounds to make such an appeal.

51.      In any event, Carrington has knowingly engaged in a routine pattern and practice of denying loan modification applicants—such as Plaintiff and Class members—the right to appeal the denial of their Applications pursuant to 12 CFR § 1024.41(h).

52.     Had Plaintiff and Class members known that Carrington would erroneously reject their Appeal Notices, they would not have submitted them.

53.     Due to Carrington's violations of 12 CFR § 1024.41, Plaintiff and Class members were harmed because they incurred expenses associated with submitting Appeal Notices to Carrington—such as their time, postage, attorneys' fees, etc.—that would ultimately be erroneously rejected by Carrington.

54.     Moreover, as a direct and proximate result of Carrington's conduct, Plaintiff and Class members have been unilaterally wrongfully deprived of their right to a full, complete, and proper review of their loss mitigation applications as required by 12 CFR § 1024.41.  Indeed, Plaintiff and Class members each had a valid basis for an appeal pursuant to 12 CFR § 1024.41(h) but have been wrongfully denied that right by Carrington.

55.     Further, Plaintiff and Class members have been denied the complete transparency that is contemplated by Regulation X, and as a result have been forced to make critical financial decisions about their homes and bankruptcy filings with incomplete information.   Indeed, Carrington's conduct has hampered and delayed Plaintiff's and Class members' abilities to make financial decisions relative to the disposition of their properties—such as whether to pursue other loss mitigation options (*e.g.*, agreeing to a short sale, consenting to foreclosure, filing for bankruptcy)—causing Plaintiff and Class members to remain in an unnecessary financial and emotional limbo for longer than they would have had Carrington acted in conformance with the provisions of 12 CFR § 1024.41.

56.     As a majority of homeowners submitting loss mitigation applications and appealing eligibility determinations thereof are involved in defending against foreclosure, accepting this kind of conduct would allow Carrington to hide behind potentially erroneous loss mitigation reviews, strip homeowners of their ability to appeal inaccurate decisions, and allow the foreclosure process to proceed in contravention of the "dual-tracking" protections established by RESPA and Regulation X.

57.     Accordingly, Plaintiff and Class members are asserting claims for relief against Carrington for breach of the duties owed to them pursuant to 12 CFR § 1024.41.

58.     Plaintiff and Class members have a private right of action, pursuant to 12 U.S.C. § 2605(f), for Carrington's breaches of 12 CFR § 1024.41, and RESPA provides for remedies which include actual and statutory damages, as well as attorneys' fees and costs.

### FACTS RELEVANT TO PLAINTIFF

59.     Plaintiff is the owner of real property located at 6407 Lafayette Boulevard, Independence, OH 44131 (the "Home").

60.     Plaintiff has maintained the Home as his primary, principal residence at all times relevant to this action.

61.     Carrington has been the servicer of Plaintiff's loan relative to his Home at all times relevant to this action.

62.     Plaintiff submitted an Application to Carrington in September 2017, of which Carrington acknowledged receiving as of September 14, 2017.

63.     At all times relevant, there was no foreclosure sale scheduled relative to Plaintiff's Home.[5]  As such, Plaintiff's Application was submitted more than 90 days before a foreclosure sale was scheduled relative to the Home.  *See*, Note 2, *supra*.

64.     Plaintiff's Application was the first such Application Plaintiff submitted to Carrington relative to the modification of his loan.

65.     On October 4, 2017, in response to Plaintiff's Application, Carrington sent Plaintiff a Denial Letter, stating that Plaintiff was ineligible for all potential loan modification options for which Plaintiff was reviewed.  *See*, Exhibit 1.

---

[5] As of the filing of this Complaint, there is still no foreclosure sale scheduled relative to Plaintiff's Home.

66.     With respect to one of the loan modification options for which Plaintiff was evaluated—the "CMS Loan Modification" option—Carrington's Denial Letter to Plaintiff stated that Plaintiff's Application was denied because Carrington "would need to defer a portion of [Plaintiff's] unpaid principal balance beyond the allowable limits of the program guidelines to reach a projected modified mortgage payment." *See*, Exhibit 1.

67.     However, Carrington's Denial Letter to Plaintiff did not state the amount of Plaintiff's unpaid principal balance that it believed would need to be deferred, how that number was calculated, what the applicable program guidelines were, or how that would affect Plaintiff's modified mortgage payment and make him ineligible for the CMS Loan Modification option. *See*, Exhibit 1.

68.     Plaintiff's Denial Letter stated that Plaintiff was eligible to appeal Carrington's decision to deny Plaintiff's Application with respect to three (3) separate modification options for which Plaintiff was reviewed, including the CMS Loan Modification option. *See*, Exhibit 1.

69.     Plaintiff's Denial Letter also stated "based on the guidelines of the [CFPB,] an appeal may be submitted if you believe you were wrongfully denied for a loan modification.  *If applicable*, you must provide [Carrington] supporting documentation for all items being disputed by no later than [November 3, 2017]." *See*, Exhibit 1 (emphasis added).

70.     Although Plaintiff's Denial Letter omitted relevant details as to why Plaintiff's Application for a CMS Loan Modification was denied, as noted above, Plaintiff believed that he was eligible for the CMS Loan Modification option based on the information provided in his Application.

71.     Because Plaintiff believed that Carrington had erroneously determined that he was ineligible for a CMS Loan Modification in spite of the information provided in his Application,

14

Plaintiff concluded that an appeal brought pursuant to 12 CFR § 1024.41(h)—which would include an independent and complete review of his Application in accordance with 12 CFR § 1024.41(h)(3)—would result in Carrington determining that he was, in fact, eligible for the CMS Loan Modification option.

72.     Accordingly, on November 2, 2017, Plaintiff submitted an Appeal Notice to Carrington by sending that Appeal Notice to the email address set forth in Plaintiff's Denial Letter—mortgageassistance@carringtonms.com—and by facsimile transmission to the number set forth in Plaintiff's Denial Letter—1.877.267.1331.  *See*, Exhibit 2.

73.     In Plaintiff's Appeal Notice, Plaintiff stated that he was appealing Carrington's decision that he was not eligible for the CMS Loan Modification option.  *See*, Exhibit 2.

74.     Plaintiff's Appeal Notice stated that he believed that Carrington's evaluation of his eligibility for a CMS Loan Modification was incorrect, and demanded that Carrington perform and independent review of Plaintiff's Application, pursuant to 12 CFR § 1024.41(h)(3)  *See*, Exhibit 2.

75.     As stated in Plaintiff's Denial Letter, Plaintiff was only required to provide Carrington with supporting documentation "if applicable."  *See*, Exhibit 1.

76.     However, because Plaintiff believed that Carrington had erroneously determined that he was ineligible for a CMS Loan Modification based on and in spite of the information provided in his previously submitted Application, and that an independent and complete review of his Application—in accordance with 12 CFR § 1024.41(h)(3)—would rectify Carrington's mistake, Plaintiff did not need to submit any additional documentation in support of his Appeal Notice.  No additional documentation was necessary or applicable.

77.     Indeed, as discussed above, the purpose of 12 CFR § 1024.41(h)(3) is to ensure that any mistakes that were made during a servicer's initial review of a loan modification application are corrected during a second, independent review of that application.

78.     Accordingly, neither 12 CFR § 1024.41(h), nor Plaintiff's Denial Letter, required Plaintiff to submit additional documentation in conjunction with his Appeal Notice.

79.     Therefore, Plaintiff's Appeal Notice complied with all relevant provisions of 12 CFR § 1024.41(h) to be eligible for an appeal, and/or complied with all requirements for an appeal set forth in Carrington's Denial Letter.

80.     On November 3, 2017—one (1) day after Plaintiff submitted his Appeal Notice to Carrington—Carrington sent Plaintiff an Appeal Rejection Letter stating that Plaintiff was unable to appeal the denial of his Application, and reciting Carrington's uniform language set forth above regarding the requirements for an appeal.  *See*, Exhibit 3.

81.     Plaintiff's Appeal Rejection Letter also stated that his Appeal Notice was "rejected due to the following:"

- •     Unable to appeal denial letter.  Borrower has insufficient Net
- •     Surplus, Income does not support ability to pay Loan.

*See*, Exhibit 3.

82.     Carrington's determination that Plaintiff was unable to appeal the denial of his Application was erroneous because, as set forth above, Plaintiff satisfied all requirements to be able to appeal Carrington's denial of his Application.

83.     For the same reasons discussed above, the fact that Carrington sent Plaintiff's Appeal Rejection Letter one (1) day after receiving Plaintiff's Appeal Notice also indicates that Carrington did not perform the requisite appeal process with respect to Plaintiff's Application.

84.     In addition, the basis for Plaintiff's Appeal Notice was that Carrington had erroneously determined that he was ineligible for a CMS Loan Modification based on and in spite of the information provided in his previously submitted Application (Exhibit 2); however, Plaintiff's Appeal Rejection Letter merely restates the conclusions set forth in Plaintiff's Denial Letter, without any additional explanation.  This also indicates that Carrington did not perform the requisite appeal process with respect to Plaintiff's Application.

85.     As set forth above, Plaintiff satisfied all requirements to avail himself of 12 CFR § 1024.41(h)'s appeal process, but as a result of Carrington's pattern and practice of failing to perform appeals, Plaintiff's Appeal Notice was erroneously rejected, and Plaintiff was denied his right to appeal the Denial Letter in accordance with 12 CFR § 1024.41(h).

86.     As such, Carrington violated the provisions of 12 CFR § 1024.41(h).

87.     In addition, Carrington violated the provisions of 12 CFR § 1024.41(c)(1)(ii) by (a) stating in its Denial Letter that Plaintiff could avail himself of 12 CFR § 1024.41(h)'s appeal process if he complied with the requirements set forth in its Denial Letter, but (b) rejecting Plaintiff's Appeal Notice, and refusing to reconsider Plaintiff's Application in accordance with the provisions of 12 CFR § 1024.41(h).

88.     Alternatively, to the extent that Plaintiff's Appeal Notice failed to comply with all relevant provisions of 12 CFR § 1024.41(h), and/or failed to comply with any Carrington-imposed requirements to avail himself of 12 CFR § 1024.41(h)'s appeal process, it is due to Carrington's routine practice of failing to accurately and completely provide loan modification applicants—such as Plaintiff—with the information necessary to avail themselves of that appeal process.

89. Indeed, Plaintiff relied on the statements in the Denial Letter he received from Carrington relative to the reasons that his Application was denied, and as to the requirements necessary to avail himself of 12 CFR § 1024.41(h)'s appeal process.

90. Carrington knew and intended that Plaintiff would rely on the statements in its Denial Letter, and that Plaintiff would submit his Appeal Notice to Carrington in reliance on those statements.

91. Accordingly, Plaintiff submitted his Appeal Notice in reliance on the statements set forth in the Denial Letter he received from Carrington, and, based on those statements, Plaintiff satisfied all requirements necessary to avail himself of 12 CFR § 1024.41(h)'s appeal process.

92. Therefore, even if Plaintiff was somehow not entitled to an appeal pursuant to 12 CFR § 1024.41(h), it was due to the fact that Carrington violated 12 CFR § 1024.41(c)(1)(ii) and 12 CFR § 1024.41(d) by misleading Plaintiff as to the necessary requirements/grounds to make such an appeal.

93. In any event, Plaintiff's Appeal Notice was denied due to Carrington's routine pattern and practice of denying loan modification applicants the right to appeal the denial of their Applications pursuant to 12 CFR § 1024.41(h).

94. Had Plaintiff known that Carrington would erroneously reject his Appeal Notice, he would not have submitted it.

95. Due to Carrington's violations of 12 CFR § 1024.41, Plaintiff was harmed because he incurred expenses associated with submitting an Appeal Notice to Carrington—such as his time, postage, attorneys' fees, etc.—that would ultimately be erroneously rejected by Carrington.

96.     Moreover, Plaintiff was denied the complete transparency contemplated by Regulation X, and Carrington's conduct has hampered and delayed Plaintiff's ability to make financial decisions relative to the disposition of his Home.

97.     Accordingly, Plaintiff, individually, and on behalf of the Class, asserts claims for relief against Carrington for breach of the duties owed to them pursuant to 12 CFR § 1024.41.

98.     Plaintiff, individually, and on behalf of the Class, has a private right of action, pursuant to 12 U.S.C. § 2605(f), for Carrington's breaches of 12 CFR § 1024.41, and RESPA provides for remedies which include actual and statutory damages, as well as attorneys' fees and costs.

## CLASS ACTION ALLEGATIONS

99.     **Class Definition**: Plaintiff brings this action pursuant to Fed R. Civ. P. 23 on behalf of a nationwide class of similarly situated individuals (the "Class"), defined as follows:

> All individuals in the United States who:
>
> (a)     Have a "federally related mortgage loan" serviced by Carrington;
>
> (b)     Submitted an Application to Carrington:
>
>> i.      On or before January 30, 2015.
>>
>> ii.     Relative to that "federally related mortgage loan,"
>>
>> iii.    That was deemed complete more than 90 days before a foreclosure sale was scheduled relative to the property that was the subject of that "federally related mortgage loan," and
>>
>> iv.     That was the first such Application submitted to Carrington;
>
> (c)     Received a Denial Letter from Carrington;
>
> (d)     Who submitted an Appeal Notice to Carrington within thirty (30) days of the date of their Denial Letter ; and

(e) Received an Appeal Rejection Letter from Carrington.

Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

100. **Ohio Subclass Definition**: Plaintiff also brings this action pursuant to Fed. R. Civ.

P. 23 on behalf of a subclass of similarly situated individuals (the "Ohio Subclass"), defined as

follows:

  All individuals in Ohio who:

(a) Have a "federally related mortgage loan" serviced by Carrington;

(b) Submitted an Application to Carrington:

  i. On or before January 30, 2015,

  ii. Relative to that "federally related mortgage loan,"

  iii. That was deemed complete more than 90 days before a foreclosure sale was scheduled relative to the property that was the subject of that "federally related mortgage loan," and

  iv. That was the first such Application submitted to Carrington;

(c) Received a Denial Letter from Carrington;

(d) Who submitted an Appeal Notice to Carrington within thirty (30) days of the date of their Denial Letter ; and

(e) Received an Appeal Rejection Letter from Carrington.

Excluded from the Ohio Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Ohio Subclass; (4) any persons who have

had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

101. **Numerosity**: Upon information and belief, the Class and Ohio Subclass are so numerous that joinder of all individual plaintiffs would be impracticable. The exact number of Class and Ohio Subclass members is presently unknown and can only be ascertained through discovery because the information is exclusively in the possession of the Defendant. However, Plaintiff believes that the Class and Ohio Subclass consists of hundreds of members, if not more, because Defendant services the loans of borrowers nationwide, and the CFPB database of complaints contains 773 separate complaints lodged against Defendant categorized as pertaining to "loan modification, collection, [and] foreclosure." *See*, CFPB Consumer Complaint Database, available at: https://www.consumerfinance.gov/data-research/consumer-complaints.

102. **Commonality and Predominance**: All members of the Class and Ohio Subclass have been subject to and affected by a uniform course of conduct: specifically, Defendant improperly failing to perform appeals pursuant to 12 CFR § 1024.41(h). There are questions of law and fact common to the proposed Class and Ohio Subclass that predominate over any individual questions including, but are not limited to:

    a.    Whether Defendant's Denial Letters comply with 12 CFR § 1024.41(c)(1)(ii) and 12 CFR § 1024.41(d);

    b.    Whether Defendant impermissibly imposed conditions relative to the availability of an appeal that contradict the provisions of 12 CFR § 1024.41(h);

    c.    Whether Defendant actually performed appeals as required by 12 CFR § 1024.41(h);

    d.    Whether Defendant performed appeals in compliance with the independence provisions of 12 CFR § 1024.41(h)(3);

    e.    Whether Defendant denied Plaintiff and Class members the right to an appeal pursuant to 12 CFR § 1024.41(h);

f.      Whether Defendant's actions described herein violate the applicable provisions of RESPA and Regulation X with respect to Plaintiff, Class members, and Ohio Subclass members;

g.      Whether Defendant's actions described herein violate the applicable provisions of the Ohio Consumer Sales Practices Act ("OCSPA")—codified as O.R.C. § 1345.01, *et seq.*—with respect to Plaintiff and Ohio Subclass members;

h.      Whether Plaintiff, Class members, and Ohio Subclass members suffered damages as a result of the Defendant's failure to comply with the applicable provisions of RESPA and Regulation X;

i.      Whether Plaintiff and Ohio Subclass members suffered damages as a result of the Defendant's failure to comply with the applicable provisions of the OCSPA;

j.      Whether Plaintiff, Class members, and Ohio Subclass members are entitled to actual damages under RESPA;

k.      Whether Plaintiff and Ohio Subclass members are entitled to actual damages under the OCSPA;

l.      Whether Plaintiff, Class members, and Ohio Subclass members are entitled to statutory damages under RESPA;

m.      Whether Plaintiff and Ohio Subclass members are entitled to statutory damages under the OCSPA;

n.      Whether Plaintiff, the Class, and the Ohio Subclass, are entitled to reasonable recover attorneys' fees and costs under RESPA; and

o.      Whether Plaintiff and the Ohio Subclass are entitled to reasonable recover attorneys' fees and costs under the OCSPA.

103.   **Typicality**: Plaintiff's claims are typical of the claims of the proposed Class and Ohio Subclass. All claims are based on the same legal and factual issues. Plaintiff, Class members, and Ohio Subclass members submitted Applications to Defendant seeking loan modifications for the primary residences. Defendant sent Denial Letters to Plaintiff, Class members, and Ohio Subclass members stating that they had been denied for an available loss mitigation option. Plaintiff, Class members, and Ohio Subclass members submitted Appeal Notices that complied with all relevant requirements to avail themselves of 12 CFR § 1024.41(h)'s appeal process.

However, Defendant failed to properly reconsider Plaintiff's, Class members', and Ohio Subclass members' Applications in response to their Appeal Notices.  As a result, Plaintiff, Class members, and Ohio Subclass members suffered damages due to Defendant's erroneous failure to comply with its obligations pursuant to 12 CFR § 1024.41.

104.    **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and Ohio Subclass. Plaintiff has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of other Class and Ohio Subclass members, and Defendant has no defenses unique to Plaintiff.

105.    **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impractical or impossible for proposed Class and Ohio Subclass members to prosecute their claims individually.  The trial and the litigation of Plaintiff's claims are manageable.

106.    In addition, if individual Class and Ohio Subclass members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. A class action is the most appropriate method for the quick and efficient adjudication of this controversy.

### COUNT I
### VIOLATIONS OF 12 CFR § 1024.41
### (On behalf of Plaintiff, the Class, and the Ohio Subclass)

107.    Plaintiff restates all allegations contained in Paragraphs 1 through 106 with the same force and effect as though fully set forth herein.

108.    Plaintiff brings this Count individually, and on behalf of the nationwide Class and the Ohio Subclass.

109.    Defendant is a mortgage "servicer" as that term is defined by 12 CFR § 1024.2(b) and 12 U.S.C. § 2605(i)(2).

110.    At all times relevant, Defendant has been the current servicer of Plaintiff's and Class members' loans.

111.    Plaintiff's and Class members' loans are each a "federally related mortgage loan" as said term is defined by RESPA and Regulation X. 12 U.S.C. § 2602(1); 12 CFR § 1024.2(b).

112.    Plaintiff and Class members submitted Applications to Defendant more than 90 days before a foreclosure sale was scheduled relative to the real property that was the subject of their loans.

113.    Plaintiff's and Class members' Applications were the first such Applications submitted to Defendant relative to the modification of their loans.

114.    After Plaintiff and Class members submitted their Applications, Defendant sent Plaintiff and Class members Denial Letters stating that Plaintiff and Class members failed to meet the eligibility requirements for some or all loss mitigation options for which their Applications were reviewed for eligibility.  *See*, Exhibit 1.

115.    Defendant's denial of Plaintiff's and Class members' Applications was appealable because the Applications were submitted more than 90 days before a foreclosure sale was scheduled, and because at least one of the loss mitigation options for which Plaintiff's and Class members' Applications were denied was for trial or permanent loan modification programs, as required by 12 CFR § 1024.41(h)(1).

116.    In response to the Denial Letters, Plaintiff and Class members sent Appeal Notices to Defendant.  *See*, Exhibit 2.

117.    Plaintiff's and Class members' Appeal Notices complied with all relevant provisions of 12 CFR § 1024.41(h) to be eligible for an appeal, and/or complied with all requirements for an appeal set forth in Defendant's Denial Letters.

118.    Despite the fact that Plaintiff and Class members met all relevant criteria to be able to appeal the Denial Letters, Defendant did not perform the requisite appeal process required by 12 CFR § 1024.41(h).

119.    Instead, Defendant responded to Plaintiff's and Class members' Appeal Notices with Appeal Rejection Letters, stating that Plaintiff and Class members were unable to appeal the denials of their Applications.  *See*, Exhibit 3.

120.    However, Plaintiff and Class members satisfied all requirements to be able to appeal Defendant's denial of their Applications, pursuant to 12 CFR § 1024.41(h).

121.    On information and belief, Defendant has a policy to not perform appeals pursuant to the requirements of 12 CFR § 1024.41(h).

122.    As such, Defendant violated the provisions of 12 CFR § 1024.41(h) by failing to reconsider Plaintiff's and Class members' Applications in response to their Appeal Notices, and Defendant violated the provisions of 12 CFR § 1024.41(c)(1)(ii) by erroneously stating that Plaintiff and Class members could avail themselves of 12 CFR § 1024.41(h)'s appeal process if they satisfied the requirements set forth in the Denial Letters.

123.    Alternatively, if Defendant contends that Plaintiff's and Class members' Appeal Notices failed to comply with all relevant provisions of 12 CFR § 1024.41(h), and/or failed to comply with any Defendant-imposed requirements to avail themselves of 12 CFR § 1024.41(h)'s appeal process, it is due to Defendant's routine practice of failing to accurately and completely

provide loan modification applicants—such as Plaintiff and Class members—with the information necessary to avail themselves of that appeal process.

124.    By doing so, Defendant established a *de facto* policy of routinely failing to perform appeals pursuant to the requirements of 12 CFR § 1024.41(h) by imposing requirements that Plaintiff and Class members would not be able to meet.

125.    As such, even if Plaintiff and Class members were somehow not entitled to an appeal pursuant to 12 CFR § 1024.41(h), it was due to the fact that Defendant violated 12 CFR § 1024.41(c)(1)(ii) and 12 CFR § 1024.41(d) by misleading Plaintiff and Class members as to the necessary requirements/grounds to make such an appeal.

126.    In any event, Defendant has knowingly engaged in a routine pattern and practice of denying loan modification applicants—such as Plaintiff and Class members—the right to appeal the denial of their Applications pursuant to 12 CFR § 1024.41(h).

127.    Had Plaintiff and Class members known that Defendant would erroneously reject their Appeal Notices, they would not have submitted them.

128.    Due to Defendant's violations of 12 CFR § 1024.41, Plaintiff and Class members were harmed because they incurred expenses associated with submitting Appeal Notices to Defendant—such as their time, postage, attorneys' fees, etc.—that would ultimately be erroneously rejected by Defendant.

129.    Moreover, as a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been unilaterally wrongfully deprived of their right to a full, complete, and proper review of their loss mitigation applications as required by 12 CFR § 1024.41, which has led to a variety of noneconomic damages, as set forth above.

130.    Accordingly, Plaintiff and Class members are asserting claims for relief against Defendant for breach of the duties owed to them pursuant to 12 CFR § 1024.41.

131.    Plaintiff and Class members have a private right of action, pursuant to 12 U.S.C. § 2605(f), for Defendant's breaches of 12 CFR § 1024.41.  12 CFR § 1024.41(a).

132.    Defendant's actions are believed to be part of a pattern and practice of behavior in conscious disregard for the Plaintiff's and Class members' rights.

133.    As a result of Defendant's actions, Defendant is liable to Plaintiff and the Class members for actual and statutory damages, as well as attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ROBERT POPE, individually, and on behalf of the Class and Ohio Subclass, prays for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and Ohio Subclass defined herein;

B.    Designating Plaintiff as representative of the Class and Ohio Subclass and his undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiff, the Class, and the Ohio Subclass, and against Defendant;

D.    Awarding Plaintiff, the Class, and the Ohio Subclass their actual damages and statutory damages as allowed under RESPA;

E.    Awarding Plaintiff, the Class, and the Ohio Subclass attorneys' fees and costs, including interest thereon, as allowed or required by law; and

F.    Granting all such further and other relief as this Court deems just and appropriate.

## COUNT II
## VIOLATIONS OF O.R.C. § 1345.02(A) and O.R.C. § 1345.02 (F)
### (On behalf of Plaintiff and the Ohio Subclass)

134.    Plaintiff restates all allegations contained in Paragraph 1 through 106 with the same force and effect as though fully set forth herein.

135.    Plaintiff brings this Count individually, and on behalf of the Ohio Subclass.

136.    The OCSPA is a state consumer protection law prohibiting unfair and deceptive acts and practices in connection with consumer transactions.

137.    Defendant is a "supplier" as that term is defined by O.R.C. § 1345.01(C).

138.    Plaintiff and members of the Ohio Subclass are "consumers" as that term is defined by O.R.C. § 1345.01(D).

139.    Plaintiff's and Ohio Subclass members' loans each constitute a "consumer transaction" as that term is defined by O.R.C. § 1345.01(A).

140.    The OCSPA makes illegal any "unfair or deceptive act or practice in connection with a consumer transaction…whether it occurs before, during, or after the transaction." O.R.C. § 1345.02(A).

141.    "Without limiting the scope of" O.R.C. § 1345.02(A), the OCSPA also makes illegal, with respect to any "consumer transaction in connection with a residential mortgage[,] knowingly failing to provide disclosures required under state and federal law" or "knowingly providing a disclosure that includes a material misrepresentation." O.R.C. § 1345.02(F).

142.    By failing to reconsider Plaintiff's and Ohio Subclass members' Applications, as required by 12 CFR § 1024.41(h), in response to Plaintiff's and Ohio Subclass members' Appeal Notices, Defendant engaged in unfair and deceptive acts and practices in violation of O.R.C. § 1345.02(A).

143.    In addition, by misrepresenting that Plaintiff and Ohio Subclass members would be able to avail themselves of 12 CFR § 1024.41(h)'s appeal process if they satisfied the requirements set forth in Defendant's Denial Letters, Defendant engaged in unfair and deceptive acts and practices in violation of O.R.C. § 1345.02(F).

28

144.     Alternatively, if Defendant contends that Plaintiff's and Class members' Appeal Notices failed to comply with all relevant provisions of 12 CFR § 1024.41(h), and/or failed to comply with any Defendant-imposed requirements to avail themselves of 12 CFR § 1024.41(h)'s appeal process, Defendant engaged in unfair and deceptive acts and practices in violation of O.R.C. § 1345.02(A) because Defendant failed to accurately and completely provide Plaintiff and Ohio Subclass members with the information necessary to avail themselves of that appeal process.

145.     In addition, said conduct would also violate O.R.C. § 1345.02(F)(1) because Defendant knowingly failed to provide the disclosures required by 12 CFR § 1024.41(c)(1)(ii) and 12 CFR § 1024.41(d) in its Denial Letters to Plaintiff and Ohio Subclass members.

146.     Moreover, said conduct would also violate O.R.C. § 1345.02(F)(2) because Defendant knowingly misrepresented the necessary requirements for Plaintiff and Ohio Subclass members to avail themselves of 12 CFR § 1024.41(h)'s appeal process in its Denial Letters.

147.     In any event, Defendant has knowingly engaged in a routine pattern and practice of denying loan modification applicants—such as Plaintiff and Ohio Subclass members—the right to appeal the denial of their Applications pursuant to 12 CFR § 1024.41(h).

148.     Had Plaintiff and Ohio Subclass members known that Defendant would erroneously reject their Appeal Notices, they would not have submitted them.

149.     Due to Defendant's violations of O.R.C. § 1345.02(A) and O.R.C. § 1345.02(F), Plaintiff and Ohio Subclass members were harmed because they incurred expenses associated with submitting Appeal Notices to Defendant—such as their time, postage, attorneys' fees, etc.—that would ultimately be erroneously rejected by Defendant.

150.     Moreover, as a direct and proximate result of Defendant's conduct, Plaintiff and Ohio Subclass members have been unilaterally wrongfully deprived of their right to a full,

complete, and proper review of their loss mitigation applications as required by 12 CFR § 1024.41, which has led to a variety of noneconomic damages, as set forth above.

151.    As a result of Defendant's actions, Defendant is liable to Plaintiff and the Ohio Subclass members for actual and statutory damages, as well as attorneys' fees and costs.  O.R.C. § 1345.09(B); O.R.C. § 1345.09(F).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ROBERT POPE, individually, and on behalf of the Class and Ohio Subclass, prays for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Ohio Subclass defined herein;

B.    Designating Plaintiff as representative of the Ohio Subclass and his undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiff and the Ohio Subclass, and against Defendant;

D.    Awarding Plaintiff and the Ohio Subclass their actual damages, statutory damages, and punitive damages as provided for by the OCSPA;

E.    Awarding Plaintiff and the Ohio Subclass attorneys' fees and costs, including interest thereon, as allowed or required by law; and

F.    Granting all such further and other relief as this Court deems just and appropriate.

*Respectfully Submitted,*

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
DannLaw
P.O. Box. 6031040
Cleveland, Ohio 44103
(216) 373-0539
(216) 373-0536 fax
notices@dannlaw.com

_/s/ Thomas A. Zimmerman, Jr._
Thomas A. Zimmerman, Jr.
Zimmerman Law Offices, PC
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020
(312) 440-4180 fax
_tom@attorneyzim.com_
_(Pro hac vice to be submitted)_

_Attorneys for Plaintiff and the Class_

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

/s/ Marc E. Dann
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Brian D. Flick (0081605)
DannLaw