UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------

| | : | |
|---|---|---|
| ROBERT POPE, | : | CASE NO. 1:18-CV-240 |
| Plaintiff, | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Doc. 14] |
| CARRINGTON MORTGAGE SERVICES, LLC, | : | |
| Defendant. | : | |

------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Robert Pope sues Defendant Carrington Mortgage Services, LLC ("Carrington") claiming violations of the Real Estate Settlement Procedures Act ("RESPA") and the Ohio Consumer Sales Practices Act ("OCSPA").[1] Plaintiff Pope alleges that Defendant Carrington failed to perform the statutorily mandated appeal of his complete loss mitigation application and has a policy or practice of refusing to perform these appeals for similar applicants. Defendant Carrington now moves to dismiss both claims.[2]

For the following reasons, the Court **DENIES** Carrington's motion to dismiss Plaintiff's RESPA claim and **DENIES AS MOOT** Carrington's motion to dismiss Plaintiff's OCSPA claim.

### I. FACTUAL BACKGROUND[3]

Defendant Carrington is a RESPA-regulated mortgage servicer and services Plaintiff Pope's home mortgage.[4] In September 2017, Plaintiff Pope submitted a complete loss mitigation application to Carrington regarding his mortgage.[5] A loss mitigation application attempts to modify an applicant's home loan in order to brunt the harm from falling behind on a mortgage and possibly allow a home

---

[1] Doc. 1.
[2] Doc. 14. Plaintiff Pope opposes. Doc. 23. Defendant Carrington replies. Doc. 24.
[3] The Court takes as true all well pleaded factual allegations when deciding a Rule 12(b)(6) motion to dismiss and nothing in this factual background section should be construed as the Court's findings of fact.
[4] Doc. 1 at ¶ 19.
[5] *Id.* at ¶ 62.

owner to keep his home.[6] Plaintiff submitted his application more than 90 days before any foreclosure sale was scheduled and in accordance with all other merits determination requirements.[7]

Carrington acknowledged receiving Plaintiff Pope's loss mitigation application on September 14, 2017.[8] On October 4, 2017, Carrington sent Plaintiff a letter stating that he was ineligible for all of the applied for loss mitigation options.[9]

One of those loss mitigation options was a CMS Loan Modification.[10] Defendant Carrington stated that Plaintiff Pope was not eligible for a CMS Loan Modification because Carrington "would need to defer a portion of [Plaintiff's] unpaid principal balance beyond the allowable limits of the program guidelines to reach a projected modified mortgage payment."[11]

Carrington's denial letter also stated that Plaintiff could appeal three of Carrington's loss mitigation decisions, including the CMS Loan Modification decision.[12] Plaintiff believed that Carrington's CMS Loan Modification denial was erroneous, and so he appealed Carrington's decision.[13] Plaintiff did not include any additional documentation with his appeal, as he did not believe any further documentation was necessary.[14] On November 2, 2017, Plaintiff sent his appeal to the fax number and e-mail address listed on the denial letter.[15]

On November 3, 2017, Defendant Carrington sent Plaintiff an appeal rejection letter.[16] In that one-page letter, Carrington stated that Plaintiff Pope was unable to appeal the denial of his loan modification application.[17] It then listed the requirements to qualify for an appeal and stated, "Unable to appeal denial letter. Borrower has insufficient Net Surplus, Income does not support ability to pay

---

[6] *See, e.g.*, Doc. 1-1.
[7] Doc. 1 at ¶¶ 59-64.
[8] *Id.* at ¶ 62.
[9] *Id.* at ¶ 65.
[10] *Id.* at ¶ 66.
[11] *Id.* (quoting Ex. 1).
[12] *Id.* at ¶ 68.
[13] *Id.* at ¶¶ 70-76.
[14] *Id.* at ¶¶ 75-78.
[15] *Id.* at ¶ 72.
[16] *Id.* at ¶ 80.
[17] *Id.*

Loan."[18]  Plaintiff alleges that this letter shows that Defendant Carrington did not perform the RESPA-required independent review of his application when he appealed Carrington's loan modification decision.[19]

Plaintiff claims that Carrington has a pattern and practice of failing to perform statutorily required appeals, as it allegedly did in Plaintiff's case.[20]  Alternatively, Plaintiff alleges that Carrington fails to notify loan modification applicants of all appeal requirements, whether those requirements are statutorily or Carrington-imposed.[21]  Then, Plaintiff alleges, when borrowers submit appeals that do not meet these unknown requirements, Carrington denies the borrower's request to appeal.[22]

Plaintiff now seeks to represent Ohio and nationwide classes whose loan application modification appeals Defendant Carrington similarly denied.[23]

## II. LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim or motion for judgment on the pleadings, the Court construes the complaint in the light most favorable to the nonmoving party, accepting its allegations as true, and drawing all reasonable inferences in favor of finding the complaint sufficient.[24]  In order to survive a motion to dismiss or for judgment on the pleadings, the complaint must allege sufficient facts "to state a claim for relief that is plausible on its face."[25]  While "detailed factual allegations" are unnecessary, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action."[26]

---

[18] *Id.* at ¶ 81 (quoting Ex. 3) (capitalization in original).
[19] *See generally id.*
[20] *See id.* at ¶ 126.
[21] *Id.* at ¶ 126.
[22] *Id.*
[23] *See id.* at ¶¶ 99-106.
[24] *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bikerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)); *Engler v. Arnold*, 862 F.3d 571, 574–75 (6th Cir. 2017) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006)).
[25] *See Nikolao v. Lyon*, 875 F.3d 310, 317 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[26] *See id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Engler*, 862 F.3d at 575 (quoting *Ashcroft*, 556 U.S. at 678)).

## III. ANALYSIS

### A. RESPA Violation

Defendant Carrington argues that Plaintiff has not alleged sufficient facts to show that Carrington violated RESPA. The Court disagrees.

RESPA, and specifically Regulation X,[27] requires a loan servicer that receives and denies a complete loss mitigation application to allow a borrower to appeal that determination as to any trial or permanent loan modification program.[28] The same personnel that made the original decision cannot perform the appeal.[29] A servicer has thirty days to notify a borrower of the outcome of the appeal.[30]

Plaintiff alleges that the appeal denial letter that he received shows that Defendant Carrington did not actually perform the required independent appeal of his loss mitigation application. Defendant Carrington, however, interprets that letter as showing that it fully complied with Regulation X's requirements.

Ultimately, the Rule 12(b)(6) standard decides this issue. Under that standard, the Court draws all reasonable inferences in favor of the Plaintiff.[31]

Here, Defendant Carrington sent Plaintiff Pope a letter stating that his "request to appeal" Carrington's denial decision "does not meet the requirements for consideration under [Carrington's] Formal Appeal Process."[32] It then goes on to explain the appeal requirements before stating that the reason for the rejection was: "Unable to appeal denial letter. Borrower has Insufficient Net Surplus, Income does not support ability to pay loan."[33]

---

[27] 12 C.F.R. § 1024.41(h).
[28] *Id.*
[29] *Id.* at § 1024.41(h)(3).
[30] *Id.* at § 1024.41(h)(4).
[31] *See Cates*, 874 F.3d at 534.
[32] *See* Doc. 1-3.
[33] *Id.*

This letter is, at best, ambiguous about whether Carrington performed a merits appeal of Plaintiff Pope's loss mitigation application. While Carrington argues that the letter's mention of "Insufficient Net Surplus" is a merits determination, the rest of the letter seemingly refers to Carrington's refusal to perform, or belief that it does not have to perform, an appeal.

Indeed, immediately before stating that Plaintiff has an insufficient net surplus, the letter says, "*Unable* to appeal denial letter."[34] Both parties seemingly agree that Plaintiff Pope was entitled, and therefore *able*, to appeal the CMS Loan Modification denial. The "unable" language is thus difficult to square with Carrington's interpretation.

Additionally, Plaintiff Pope received Carrington's appeal determination one day after he sent his appeal.[35] Plaintiff alleges that, by contrast, Carrington typically takes a full thirty days to review original complete loss mitigation applications.[36] Carrington may simply have an extremely quick turnaround for loss mitigation appeals. However, given that Regulation X requires servicers to perform an "independent evaluation" on appeal,[37] the differences in Carrington's timing for performing an original evaluation versus an appeal bolsters Plaintiff's allegation that no merits appeal occurred.

Defendant Carrington offers an alternative reading of the appeal denial letter. Specifically, Carrington argues that the "Insufficient Net Surplus" statement in the letter was a merits denial performed by an independent evaluator.[38] Defendant Carrington argues that the length of the letter and speed of the review are irrelevant because Regulation X does not require a lengthy response and does not impose any procedural review requirements on servicers beyond that an independent evaluator perform the appeal.[39]

---

[34] *Id.* (emphasis added).
[35] *Compare id.* ("Notice Date: 11/03/2017") *with* Doc. 1 at ¶ 72.
[36] Doc. 1 at ¶ 38.
[37] *See* 12 C.F.R. § 1024.41(h)(3).
[38] *See* Doc. 24 at 4.
[39] *See* 12 C.F.R. § 1024.41.

Case No. 1:18-cv-240
Gwin, J.

Defendant Carrington's interpretation is plausible, but Plaintiff's interpretation of the letter and the events leading to the letter's creation is equally plausible. Choosing between two plausible interpretations is not the Court's job when deciding a Rule 12(b)(6) motion to dismiss. Instead, the Court must merely determine whether the factual allegations in a plaintiff's complaint plausibly allege a legal violation.[40] Because Plaintiff Pope has plausibly alleged a RESPA violation, the Court **DENIES** Defendant Carrington's motion to dismiss.

## B. Damages

Defendant Carrington argues that Plaintiff has not adequately pleaded the pattern or practice of RESPA violations necessary to qualify for statutory damages. Defendant also argues that Plaintiff has not adequately pleaded actual damages.

Carrington notes, correctly, that the only specifically identified alleged RESPA violation in the complaint is Plaintiff's. Plaintiff also alleges, however, that there are hundreds of improper appeal denials similar to Plaintiff's.[41] As evidence of this, Plaintiff notes that the Consumer Financial Protection Bureau has received 773 complaints relating to Defendant's "loan modification, collection, [and] foreclosure" practices.[42]

Additionally, Plaintiff's loan modification appeal denial letter appears to be a form letter with minimal individualized content.[43] Viewed in Plaintiff's favor, that form letter appears to be totally unresponsive to Plaintiff's request for an appeal. The letter, seemingly incorrectly, denies that Plaintiff has a right to appeal.[44] It also provides none of the additional information that Plaintiff requested about the merits of Carrington's initial denial decision and does not even acknowledge that this

---

[40] *See Cates*, 874 F.3d at 534.
[41] *See* Doc. 1 at ¶ 101.
[42] *Id.*
[43] *See* Doc. 1-3.
[44] *See id.*

information was requested.[45] Other courts have recognized, and this Court agrees, that an unresponsive form letter can provide evidence of a pattern or practice.[46]

Defendant Carrington would seemingly impose a requirement that a plaintiff provide documentary evidence of other violations in order to state a statutory damages claim. But RESPA is a remedial consumer protection statute that courts should liberally construe.[47] This remedial nature seems especially potent in the Regulation X context, because Regulation X was promulgated as part of the post-2008 housing crisis reforms.[48] Further, Defendant's standard seems an especially onerous one to impose before a plaintiff has had the opportunity for any discovery.

Given RESPA's remedial purpose, and the additional factual allegations that suggest Plaintiff's appeal denial was not an isolated incident, the Court sees no reason to impose Defendant's heightened pleading standard here. As such, the Court finds that Plaintiff has adequately pleaded the pattern or practice of RESPA violations necessary to receive statutory damages.

Carrington also argues that Plaintiff has not adequately pleaded actual damages. Carrington argues that Plaintiff's damages are all related to expenses he incurred in preparing to appeal, which according to Carrington, have "nothing to do with plaintiff's submission of an Appeal Notice."[49]

But other courts have held, and the Sixth Circuit has suggested, that a plaintiff can establish actual RESPA damages when the plaintiff incurred expenses submitting paperwork to a lender, but the lender "ignored its statutory duties to adequately respond."[50] That is what Plaintiff Pope alleges

---

[45] *Compare* Doc. 1-2 at 1-2 (requesting additional information in order to facilitate a "direct, knowledgeable, and successful appeal") *with* Doc. 1-3 (mentioning none of this information).
[46] *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 (11th Cir. 2016); *see also Lage v. Ocwen Loan Servicing LLC*, 839 F.3d 1003, 1012 (11th Cir. 2016) (noting that allegations of multiple unresponsive form letters were sufficient to plead a RESPA pattern or practice claim); *Marais*, 24 F. Supp.3d at 731 (granting summary judgment when a loan servicer replied to a Qualified Written Request with one unresponsive form letter and allowing further discovery on plaintiff's pattern and practice allegations).
[47] *See In re Carter*, 553 F.3d 979, 985 & n.5 (6th Cir. 2009).
[48] *See Campbell v. Nationstar Mortg.*, 611 F. App'x 288, 296 (6th Cir. 2015) (noting that the CFPB promulgated 12 C.F.R. § 1024.41 pursuant to the Dodd-Frank Act and RESPA).
[49] Doc. 24 at 8.
[50] *See Marais v. Chase Home Fin., LLC*, 24 F. Supp. 3d 712, 727 (S.D. Ohio 2014) (quoting *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 721 (6th Cir. 2013)); *Watson v. Bank of Am., N.A.*, No. 16-cv-513-GPC(MDD), 2016 WL 3552061, at *12-13 (S.D. Cal. June 30, 2016).

happened here. He incurred costs preparing his appeal, and Defendant Carrington ignored its statutory duty to perform an independent appeal.

This Court agrees with that holding for three reasons. First, as the district court explained in *Marais*, the idea of retroactively caused damages is not novel.[51] Second, the Sixth Circuit's recent RESPA damages precedents suggest that district courts should construe actual damages broadly.[52] Finally, RESPA itself is a remedial statute that courts should construe broadly to effectuate Congress's purpose of protecting consumers in the real estate settlement and loan servicing processes.[53] A broad conception of actual damages helps to further that purpose.[54]

Beyond this, Plaintiff Pope has alleged other, seemingly emotional, damages.[55] The Sixth Circuit has recognized that adequately proven emotional damages may constitute actual damages under RESPA.[56]

Thus, Plaintiff Pope has adequately pleaded statutory and actual damages. The Court therefore **DENIES** Defendant Carrington's motion to dismiss on this ground.

## C. OCSPA

Plaintiff Pope has withdrawn his Ohio Consumer Sales Practices Act claim.[57] The Court therefore **DENIES AS MOOT** Defendant's motion to dismiss that claim.

---

[51] *Marais*, 24 F. Supp. 3d at 728 ("If a fellow pays a painter to paint his house, the payment is a cost. If the painter in fact, paints the house, the cost remains a cost. If the painter does not paint the house and instead, absconds with the money, the cost (though already incurred and paid) transmogrifies into damages.").
[52] *See Marais v. Chase Home Fin., LLC*, 736 F.3d 711, 721 (6th Cir. 2013); *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 425 (6th Cir. 2013) (finding adequate an allegation of "damages in an amount not yet ascertained, to be proven at trial"); *Houston v. U.S. Bank Home Mortg. Wisconsin Serv.*, 505 F. App'x 543, 548 & n.6 (6th Cir. 2012) ("We find nothing in the text of § 2605(f), or in RESPA more broadly, to preclude 'actual damages' from including emotional damages, provided that they are adequately proven.").
[53] *See* 12 U.S.C. § 2601(a); *see also Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665-66 (9th Cir. 2012) (explaining that Congress expanded the statute's scope to encompass loan servicing in 1990).
[54] *See, e.g.*, *Marais*, 736 F.3d at 719 ("As a remedial statute, RESPA is construed broadly to effectuate its purposes.").
[55] *See* Doc. 1 at ¶¶ 54-56 (alleging that Plaintiff was "denied the complete transparency contemplated by Regulation X, and Carrington's conduct has hampered and delayed Plaintiff's ability to make financial decisions relative to the disposition of his Home . . . causing Plaintiff and Class members to remain in an unnecessary financial and emotional limbo").
[56] *See Houston*, 505 F. App'x at 548 & n.6.
[57] *See* Doc. 23 at 1 n.1.

Case No. 1:18-cv-240
Gwin, J.

## CONCLUSION

For those reasons, the Court **DENIES** Defendant Carrington's motion to dismiss Plaintiff's RESPA claim and **DENIES AS MOOT** Defendant Carrington's motion to dismiss Plaintiff's OCSPA claim.

IT IS SO ORDERED

Dated: June 12, 2018                                    *s/      James S. Gwin*
                                                        JAMES S. GWIN
                                                        UNITED STATES DISTRICT JUDGE